# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:06 CR 63 |
| | ) | No. 2:13 CV 128 |
| VIKRAM S. BUDDHI | ) | |

## OPINION AND ORDER

Defendant Vikram Buddhi has filed a motion to vacate his conviction under 28 U.S.C. § 2255. (DE # 207.) Defendant was charged by indictment with two counts of knowingly and willfully threatening to kill the President of the United States in violation of 18 U.S.C. § 871(a); two counts of knowingly and willfully threatening to kill the Vice President of the United States in violation of 18 U.S.C. § 871(a); two counts of knowingly and willfully threatening to kill the wife of the President of the United States in violation of 18 U.S.C. § 879(a); two counts of knowingly and willfully threatening to kill the wife of the Vice President of the United States in violation of 18 U.S.C. § 879(a); two counts of knowingly transmitting in interstate commerce a communication containing a threat to another person, the Secretary of Defense, in violation of 18 U.S.C. § 875(c); and one count of willfully threatening to unlawfully damage and destroy buildings and real property by means of fire and explosives, using an instrument of interstate commerce, in violation of 18 U.S.C. § 844(e) (DE # 9.)

At trial, the government presented evidence which established that defendant posted several messages on Yahoo! electronic message boards. Those messages included the following language, in part:

CALL FOR ASSASSINATION OF GW BUSH
...
GO IRAQIS!
RAPE AND KILL THE ANGLOSAXONS...NO MERCY.

KILL GW BUSH
RAPE AND KILL LAURA BUSH
KILL DICK CHENEY THE WHITE FAT PIG
RAPE AND KILL LYNNE CHENEY
KILL DONALD RUMSFELD THE OLD GEEZER CROOK
RAPE AND KILL THE ANGLOSAXON REPUBLICANS
...
BOMB KEY SITES IN US:ITS LEGAL 4 ARABS
...
ASSASSINATION OF GW BUSH SOON
...
IT IS NOW LEGAL UNDER INTERNATIONAL LAW TO
BOMB KEY SITES IN THE USA. IRAQIS! GIVE
ANGLOSAXONS THE TIT REACTION FOR THE TAT
ACTION OF BUSH AND REPUBLICANS.
...
KILL THE WHITE ANGLOSAXON AMERICAN BRITISH
BASTARDS...
...
BOMB ALL FACILITIES SET UP BY ANGLOSAXONS . . .
BOMB ALL TRADE AND COMMERCE SETUP BY
ANGLOSAXONS IN ASIA, AND BUILD YOUR OWN
FACILITIES . . . THAT EXCLUDES THE ANGLOSAXONS.
...
BOMB AND DESTROY ANGLOSAXON POWERPLANTS,
ROADS, BRIDGES, NUCLEAR PLANTS, WATER SUPPLY,
COMMERCE BUILDINGS, OIL LINES 'OWNED' BY
ANGLOSAXON REPUBLICANS.


Government's Exhibits 1-5.

Defendant pleaded not guilty to all of the charged offenses. A jury trial was held,

and defendant was convicted of all counts. (DE # 100.) Defendant appealed his

conviction, but his appeal was dismissed for lack of prosecution. (Appellate Docket

# 63.) Defendant appealed to the Supreme Court, but the Supreme Court denied his petition for certiorari. (Appellate Docket # 73.) Defendant has now moved to vacate his conviction.[1] (DE # 207.) For the following reasons, that motion is denied.

## I.    LEGAL STANDARD

Habeas corpus relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to succeed on a habeas corpus petition pursuant to 28 U.S.C. § 2255, a federal prisoner must "show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.*

---

[1] A defendant must be "in custody" to obtain habeas relief. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (district court has jurisdiction to entertain a habeas petition only when the petitioner is "in custody" pursuant to the conviction under attack at the time the petition is filed). The court previously questioned whether defendant is currently "in custody" (DE # 209) because defendant is not currently incarcerated and is living in India without any type of supervision from United States Probation (DE # 211). At the time he filed his petition, however, defendant's term of supervised released had not expired. (DE # 211.) There are cases that find defendants in the same situation as defendant in this case are not currently "in custody." *See Shishkin v. United States*, No. 10–cv–4201, 2013 WL 6859844, at *2 (E.D. N.Y. Dec. 30, 2013) ("Shishkin, who is living abroad without any accountability to or oversight by judicial officers of the United States, is therefore not 'in custody' for purposes of a § 2255 petition."); *Ullah v. United States*, Nos. 09–CV–938A, 04–CR–30A, 2010 WL 144401, at *2 (W.D. N.Y. Jan. 11, 2010) (concluding that defendant who had been deported, but was still on supervised release, was not "in custody" for purposes of § 2255). *But see United States v. Milovanovic*, No. 8:03–CR–240, 2012 WL 72710, at *2 (M.D. Fla. Jan. 10, 2012) (reaching opposite conclusion). While the decisions that find that a defendant in this situation is not "in custody" are certainly persuasive, the court believes that Seventh Circuit precedent indicates that the Seventh Circuit would conclude that a deported defendant is still in custody for purposes of § 2255, even if that defendant is no longer being actively supervised. *See United States v. Akinyemi*, 108 F.3d 777, 778-80 (7th Cir. 1997); *see also United States v. Wilson*. 240 F. App'x 139, 144 (7th Cir. 2007)

A § 2255 motion is neither a substitute for nor recapitulation of a direct appeal.

*Prewitt*, 83 F.3d at 816; *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing petitioner's motion, the court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or § 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not assume the role of advocate for the pro se litigant and may not rewrite a petition to include claims that were never presented." *Id.* (citations and quotations omitted). Here, the court will assess defendant's claims with these guidelines in mind.

## II. ANALYSIS

In his petition, defendant brings eleven separate grounds for relief. As noted above, defendant appealed his conviction, but that appeal was dismissed after defendant failed to prosecute his appeal. Because defendant's appeal was dismissed for failure to prosecute, he failed to raise any claims in his direct appeal. Therefore, some of his claims may be procedurally defaulted if he could have raised them on his direct appeal. *See Henderson v. Thieret*, 859 F.2d 492, 493 (7th Cir. 1988) ("[A] district court may, in considering a § 2255 . . . petition, raise the question of procedural default *sua sponte* even where the state has failed to raise it."). The court will begin its analysis with defendant's ineffective assistance of counsel claims before addressing the claims which may be procedurally defaulted.

## A. Ineffective Assistance of Counsel

In Ground 10 of his petition, defendant argues that both his trial and appellate counsel were ineffective. (DE # 208 at 8.) With regard to his appellate counsel, defendant requested that his attorney withdraw from representing him on appeal (Appellate Docket # 33), and the Seventh Circuit granted that motion (Appellate Docket # 42), allowing defendant to pursue his appeal pro se. "One who exercises the right of self-representation cannot contend that he received ineffective assistance of counsel." *Peoples v. United States*, 403 F.3d 844, 849 (7th Cir. 2005). Therefore, defendant's argument that his appellate counsel was ineffective fails.

Defendant also argues that his trial counsel was ineffective in several respects. "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The test to determine whether an attorney has delivered ineffective assistance such that a defendant's Sixth Amendment right to counsel has been violated is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two prongs. First, the "defendant must show that the performance of counsel fell outside the 'range of competence demanded of attorneys in criminal cases'–i.e., that it 'fell below an objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence. *Id.*

Second, the defendant must show that he suffered prejudice as a result of his counsel's ineffectiveness. *Id*. at 604. In other words, the defendant must demonstrate "a reasonable probability that, *but for* counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court should deny an ineffective assistance of counsel claim if the defendant has made an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. The court may assess the prongs in whichever order it chooses. *Id*. Additionally, though defendant has made multiple arguments in support of his claims that his trial counsel was constitutionally ineffective, it must be kept in mind that:

> [I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.

*Peoples,* 403 F.3d at 848 (citing *Bell v. Cone,* 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir. 1997)). Thus, while the court addresses each of the issues which defendant has labeled as grounds individually, it is counsel's performance as a whole that must be judged. The court will address each of defendant's arguments that his trial counsel was ineffective in turn.

### i. Failure to Research the Mens Rea Elements of the Charged Offenses

Defendant does not give much detail regarding this claim, stating only that his trial counsel "failed to research the law pertaining to the mens rea requirement of the statutes, in accord with Virginia v. Black (2003)." (DE # 208 at 8.) Defendant, however,

makes what appears to be the same argument in more detail in Ground 2 of his petition, and the court will analyze these claims together. In Ground 2, defendant argues that the district court erred by not including a subjective intent requirement in its definition of true threat. (DE # 208 at 2.) Specifically, defendant argues that the definition of true threat must include "a subjective intent requirement that the defendant intended his statements to be perceived as [an] expression of intention to inflict harm." (*Id.*)

Traditionally, the law in the Seventh Circuit regarding true threats has been an objective standard – "an inquiry that asks whether a reasonable speaker would understand that his statement would be interpreted as a threat (the 'reasonable speaker' test) or alternatively, whether a reasonable listener would interpret the statement as a threat (the objective 'reasonable listener' or 'reasonable recipient' test)."*United States v. Parr*, 545 F.3d 491, 499 (7th Cir. 2008). In *Virginia v. Black*, however, a case analyzing the legality of a Virginia statute outlawing the burning of crosses, the Supreme Court stated that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." 538 U.S. 343, 359 (2003).

Several Circuits, including the Seventh Circuit, questioned whether this language from *Black* indicated a shift away from the objective standard that was previously applied to the true threat analysis. *Parr*, 545 F.3d at 499-500. In *Parr*, the Seventh Circuit stated the following regarding *Black*:

> It is possible that the Court was not attempting a comprehensive redefinition of true threats in *Black;* the plurality's discussion of threat doctrine was very

8

> brief. It is more likely, however, that an entirely objective definition is no
> longer tenable. *See Cassel,* 408 F.3d at 631–33. But whether the Court meant
> to retire the objective "reasonable person" approach or to add a subjective
> intent requirement to the prevailing test for true threats is unclear.

*Id.* at 500. The Seventh Circuit ultimately did not decide the issue in *Parr, id.*, and the

Seventh Circuit has not addressed the issue again since its decision in *Parr.*

Several other Circuits have recently addressed this issue, however, and while at

least one Circuit has concluded that *Black* does indeed require a subjective intent true

threat analysis, *United States v. Cassel*, 408 F.3d 622, 632-33 (9th Cir. 2005), the majority of

Circuits to address this issue have concluded that an objective approach still applies

after *Black. See United States v. Clemens*, 738 F.3d 1, 9-12 (1st Cir. 2013); *United States v.*

*Elonis,* 730 F.3d 321, 327-32 (3d Cir. 2013); *United States v. Martinez*, 736 F.3d 981, 986-88

(11th Cir. 2013); *United States v. Nicklas,* 713 F.3d 435, 438-40 (8th Cir. 2013); *United States*

*v. Jeffries,* 692 F.3d 473, 479-81 (6th Cir. 2012); *United States v. White,* 670 F.3d 498, 508-10

(4th Cir. 2012). The court will follow the majority of circuits that have addressed this

issue, and concludes that it was proper to use the objective approach in its definition of

true threat. *United States v. Haddad*, No. 09 CR 115, 2014 WL 1493152, at *1-3 (N.D. Ill.

Apr. 16, 2014) (reaching same conclusion); *see also United States v. Stewart*, 411 F.3d 825,

827-28 (7th Cir. 2005) (refusing to add subjective intent requirement to 18 U.S.C.

§ 875(c)). Therefore, defendant's arguments on this issue fail.

### ii. Failure to Research the Definition of "Threat"

Next defendant argues that his trial counsel was ineffective for failing to

"research the law pertaining to the definition of 'threat' as being only [an] 'expression of

intention' and not [a] 'risk of harm." (DE # 208 at 8.) Once again, defendant does not go into great detail with this argument, but presents the argument in more detail in Ground 9 of his petition, and the court will analyze these two claims together.

In Ground 9 of his petition, defendant points out that the court never explicitly defined the word "threat" in its jury instructions. (DE # 208 at 7.) Defendant goes on to argue:

> In any contemporary dictionary, there are two meanings of threat listed. (1) threat is a "risk of harm", and (2) threat is "an expression of intention to inflict harm". The plain language of the statutes shows that the threat statutes only proscribe the latter meaning, because the word "threat" in the statutes is followed by an infinitive "to kill", "to injure", "to destroy" etc.
>
> ***
>
> The threat statutes do not proscribe threats against the President or others in the sense of "a risk of harm." The threats must be threats to do some act.
>
> ***
>
> Given that the Court never explicitly defined the word "threat", the Court's supplemental instruction (intentionally or unintentionally) [(DE # 105)] broadened the definition of "threat" to include "a risk of harm" (such as caused by, for example, frightening language). Consequently, defendant was wrongfully convicted under an improper construction of the statutes.

(*Id.*)

The problem with defendant's argument on this issue is the jury was given the following instruction:

> Before you can convict the defendant under the law, you must be convinced beyond a reasonable doubt that the defendant intentionally made the statement with which he is charged in the context and under such circumstances that a reasonable person would foresee that the statement would be interpreted by persons reading it as a serious expression *of an intention to inflict bodily harm upon or take the life of another person*.

Court's Instruction # 24, in part.

Thus, although the court did not define the word "threat" as defendant now suggests it should have, Court's Instruction #24 eliminated any possibility that the jury convicted defendant based on "a risk of harm" as opposed to expressions "of intention to inflict harm," as defendant suggests in his petition. (DE # 208 at 7.) Defendant's argument on this point therefore fails.

### iii. Failure to Challenge Unconstitutionality of Mens Rea Requirement

Defendant next argues that his trial counsel was ineffective for failing to "challenge the unconstitutionality of the lack of mens rea requirement in the statutes as construed by the district court." (DE # 208 at 8.) Defendant provides no additional detail on this argument, and the court can only assume that defendant's argument here involves the Supreme Court's decision in *Black*, which the court addressed above in section I. Defendant's argument regarding *Black* is not persuasive, as noted above, and defendant's argument here accordingly fails as well.

Defendant goes on to argue that his trial counsel was ineffective because counsel "failed to argue that the statutes only proscribe 'expressions of intention to inflict harm' and not mere 'posing a risk of harm.'" (DE # 208 at 8.) This is the same argument the court addressed in section ii, noted above, and fails for the same reasons noted in that section.

### iv. Failure to File Motions for Judgment of Acquittal and New Trial

Defendant next argues that his trial counsel was ineffective for the following reasons: "Counsel failed to argue that there was no evidence supporting an inference

that the statements would be perceived as threats, failed to file a motion for judgment of

acquittal after [the] verdict, and failed to file a motion for a new trial." (DE # 208 at 8.)

With regard to defendant's first argument, that his trial counsel failed to argue there

was no evidence supporting an inference that defendant's statements would be

perceived at threats, contrary to defendant's argument in his petition, defendant's trial

counsel made the following arguments at trial:

> In this postings that we see, the question is, where is the true threat? Is there
> any expression that Mr. Buddi [sic] was going to kill the president of the
> United States? Is there any expression that Mr. Buddi [sic] was going to kill
> the vice-president of the United States or the first lady? Is the evidence – look
> at it forever, tear it apart, look at it. Where does it say Mr. Buddi [sic]
> intended to kill or injure Donald Rumsfeld? That's what he's charged with.
>
> The government can talk about all of the bad language in postings three,
> four[,] and five as much as they want, but what's pertinent to postings – to
> Counts 1 through 10 are the first two. And where does it say that Mr. Buddi
> [sic] is going to kill the president, the vice-president? It doesn't.

Trial Transcript Volume IV, pp. 35-36.

> A true threat. The defendant intentionally made the statement, which he is
> charged in the context and under such circumstances that a reasonable
> person would foresee that the statement would be interpreted by persons
> reading it as a serious express of an intention to inflict bodily harm upon or
> take the life of another person. That it was a serious expression.
>
> Could he – would you interpret those as being serious expressions? Would
> you interpret those that he was actually going to do it? No. No.
>
> * * *
>
> It's offensive. It's nasty. It's crude. Push the button, and get off your
> computer. Don't let people like that into you life to bother you, but it's not
> a crime.

Trial Transcript Volume IV, page 43. Defendant's trial counsel clearly argued to the jury

that the evidence presented at trial showed that the statements should not be

interpreted as serious expressions of intentions to inflict bodily harm, and defendant's argument on this issue is not persuasive.

Next, defendant argues that his trial counsel was ineffective for failing to file a motion for a judgment of acquittal after the jury returned its verdicts. Although he does not specify the grounds on which he wishes his trial counsel had moved for a judgment of acquittal, defendant argues at various points in his brief that he is actually innocent because his statements were advocacy and not threats to do the actual acts. (DE # 208 at 1, 3, 7.) The court will therefore assume that defendant believes his trial counsel should have moved for a judgment of acquittal because a reasonable jury could not conclude the statements constituted threats as they were only advocacy.

 "A judgment of acquittal must be granted when 'the evidence is insufficient to sustain a conviction.'" *United States v. White*, 698 F.3d 1005, 1013 (7th Cir. 2012) (citing FED. R. CRIM. PRO. 29(a)). When reviewing a motion for judgment of acquittal, the court must "examine that evidence in the light most favorable to the government and will uphold the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Howard*, 619 F.3d 723, 726 (7th Cir. 2010). A defendant challenging a conviction based on the sufficiency of the evidence faces a "nearly insurmountable hurdle[.]" *Id.* (citations and quotations omitted); *see also United States v. Melendez*, 401 F.3d 851, 854 (7th Cir. 2005) ("Sufficiency of the evidence challenges rarely succeed because we owe great deference to the jury's verdict."). A sufficiency of the evidence challenge can only succeed if "the record is devoid of evidence from which a reasonable jury could find guilt beyond a

reasonable doubt." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010) (citation and quotation omitted

Although it is possible that a reasonable jury could have concluded that the statements defendant made in this case were not true threats, the court cannot say that this is the only conclusion a reasonable jury could reach. The statements in this case may have been somewhat ambiguous, "but the task of interpretation was for the jury," *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990), and a reasonable jury certainly could conclude that defendant's statements were true threats as defined in the court's jury instructions. Therefore, even if defendant's trial counsel had moved for a judgment of acquittal based on insufficient evidence, it would not have been successful. Defendant's argument on this issue therefore fails. *United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004) ("[A] failure to file a motion for acquittal [is] not prejudicial where the evidence against the defendant was sufficient to support a conviction.").

Defendant also argues that his counsel was ineffective for failing to move for a new trial. (DE # 208 at 8.) Defendant, however, does not indicate the grounds on which he wishes his trial counsel had moved for a new trial. Defendant has not mentioned or directed the court to any newly discovered evidence, and the evidence that was actually presented at trial was sufficient to sustain defendant's convictions. Therefore, defendant's argument on this issue fails.

### v. Failure to Make Grammatical Argument

Defendant next argues:

> Counsel failed to argue at trial that imperative statements have an implicit second person subject (you), and that the government had failed to present evidence that would transform the second person subject into [the] first person subject (plural or singular i.e., I or we). Counsel never argued that it is irrational to conclude an expression of intention from [the] imperatives in this case. Counsel never bother [sic] to research and present the English grammar argument that, given the government's evidence, a reasonable person would not perceive the defendant's statements as expressions of intention to inflict harm.

(DE # 208 at 8.) In Ground 1 of his petition, defendant makes essentially the same argument, and the court will therefore analyze these arguments together.

In Ground 1 of his petition, defendant argues that the evidence submitted at trial was 'insufficient to support the defendant's conviction because no rational trier of fact could have found beyond a reasonable doubt that defendant's imperative statements would be perceived by a reasonable person as expressions of defendant's or cohort's intention to inflict harm." (DE # 208 at 1.) Defendant goes on to argue that all of his statements were "in the imperative language, which under [the] rules of English grammar have an implicit subject actor of second person (you) and not a first person actor (I or we). . . . [The] government presented no evidence of a statement such as 'Let us do this' or evidence expressed in the statements of a nexus between defendant and the readers on the Yahoo message board . . . to permit an inference that the statements would be perceived as expressions of intentions to do the acts." (*Id.*)

Defendant made essentially the same argument in his pretrial motion to dismiss the indictment. (DE # 53 at 1-3.) The court, however, rejected defendant's argument the first time he made it:

> In this case, defendant claims that he did not technically claim that he would attempt any acts of violence himself, but merely encouraged others to do so. Defendant claims that advocacy of violence is protected by the First Amendment under *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). However, numerous cases suggest that the fact that defendant did not specifically state that he would be the one to commit the violent acts does not necessarily mean that the statement is not a true threat as a matter of law. For example, in *United States v. Schneider*, the defendant wrote a letter to the chief justices of the Illinois Supreme Court stating, amongst other things: "[A circuit court judge] is of your problem and if is allowed to continue to be mine, he will be executed." 910 F.2d 1569, 1570 (7th Cir. 1990). The Seventh Circuit upheld the jury's finding that the defendant's speech constituted a true threat: "The threat in this case was ambiguous, but the task of interpretation was for the jury." *Id.*
>
> Similarly, in *United States v. Bellrichard*, the Eight Circuit considered whether the First Amendment protected speech in a postcard sent to a county commissioner. 994 F.2d 1318 (8th Cir. 1993). In the postcard, Bellrichard did not claim that he, himself, would commit violent acts against the commissioner, but rather conveyed that others should and would with the following statements: "Dump her in the incinerator!"; "The 1st thing that ought to get burned in that proposed incinerator is your God-damned dead body"; "You'd best begin opposing an incinerator in ol' Winona or else you may get your ignorant ass burned." *Id.* at 1321 n.5. The court upheld the jury's guilty verdict as to that count, finding that the speech "clearly contained language that a jury reasonably could regard as a 'true threat,'" and that the use of outrageous and conditional language was immaterial. *Id.* at 1322. In another case, the Ninth Circuit upheld the defendant's conviction under § 871 for mailing bloody depictions of President Reagan's head and the phrase "Kill Reagan" to local judges, a newspaper, and a church leader. *Merrill,* 746 F.2d at 461. Further, in *United States v. Orozco-Santillan,* the court upheld the jury's finding that statements such as "you will pay for this" constituted true threats, despite fact that the threat was "subtle." 903 F.2d 1262, 1266 (9th Cir. 1990).
>
> In this case, many of defendant's statements depict violence without explicitly naming an actor (e.g., "Kill GW Bush"; "Rape and kill Laura Bush";

etc.). However, the cases cited above (such as *Merrill,* in which the defendant simply stated "Kill Reagan") make clear that this fact is not necessarily determinative of whether the statements constitute true threats. *Khorammi* requires that the jury make the decision in all but the clearest of cases. In light of the above holdings, the court finds that the First Amendment and the statute prohibiting threats against the life of the President and those closest to him do not hinge on technicalities of word choice. A reasonable recipient could still interpret defendant's communications as threats even if his speech was couched in the rhetoric of advocacy. Therefore, the court cannot dismiss the indictment as a matter of law.

(DE # 67 at 6-7.)

Defendant has not convinced the court that its initial ruling on this issue was incorrect. Although the threats in this case may have been ambiguous, "the task of interpretation was for the jury . . . ." *Schneider*, 910 F.2d at 1570. Additionally, in his closing argument, defendant's trial counsel made essentially the same argument defendant is advocating for in his petition, although not couched in grammatical terms as defendant now suggests:

In the postings that we see, the question is, where is the true threat? Is there any expression that Mr. Buddi [sic] was going to kill the president of the United States? Is there any expression that Mr. Buddi [sic] was going to kill the vice-president of the United States or the first lady? Is the evidence – look at it forever, tear it apart, look at it. Where does it say Mr. Buddi [sic] intended to kill or injure Donald Rumsfeld? That's what he's charged with.

The government can talk about all of the bad language in postings three, four[,] and five as much as they want, but what's pertinent to postings – to Counts 1 through 10 are the first two. And where does it say that Mr. Buddi [sic] is going to kill the president, the vice-president? It doesn't.

Trial Transcript Volume IV, pp. 35-36. Defendant's argument on this issue therefore fails.

### vi. Failure to Develop Evidence at Trial

Defendant's final argument that his trial counsel was ineffective reads as follows:

> Counsel never bother [sic] to develop contextual evidence at trial by examining government witnesses or by putting up defense witnesses to elicit testimony from witnesses to show that a reasonable would [sic] more likely than not interpret the defendant's imperative statements as advocacy rather than as expressions of intention to inflict harm.

(DE # 208 at 8.)

Despite defendant's arguments in his petition to the contrary, his trial counsel did cross examine government witnesses to elicit testimony that they believed defendant's statements were advocacy. Trial Transcript Volume II, pp. 83-86; Trial Transcript Volume II, p. 117; Trial Transcript Volume II, pp. 144-45. And, although defendant now asserts that his trial counsel should have called witnesses to testify that a reasonable person would interpret defendant's statements as advocacy as opposed to expressions of an intention to inflict harm, defendant has not identified who these witnesses would be. To show prejudice from counsel's failure to call these unidentified witnesses, defendant "must make a comprehensive showing of what the potential witness' testimony would have been and how it would have produced a different result. . . . This information should generally be presented to the habeas court in the form of actual testimony by the witness or an affidavit." *Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir. 1991); *see also United State v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Defendant has not made such a showing here.

Defendant has failed to identify the potential witnesses he argues his trial counsel should have called or presented evidence as to what those witnesses would have testified about. Additionally, defendant's trial counsel attempted to elicit testimony from government witnesses on cross examination that defendant's statements were advocacy. Defendant's arguments on this point therefore fail.[2]

### vii. Conclusion

Defendant has failed to establish either that his trial counsel's performance was deficient or that he was prejudiced by his trial counsel's performance. *Uchtman*, 398 F.3d at 603-04. Additionally, defendant cannot claim ineffective assistance of appellate counsel when he proceeded pro se on appeal. Defendant's motion will therefore be denied as it relates to his claims of ineffective assistance of counsel.

### B. Other Claims

Defendant also brings several grounds for relief that are unrelated to his claims of ineffective assistance of counsel. Each of these claims could have been raised in defendant's direct appeal, had it not been dismissed for failure to prosecute. As noted earlier, "[t]he failure to raise an issue on direct appeal generally bars a defendant from raising it later in a post-conviction proceeding." *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). In analyzing these claims, the court will first explain why defendant

---

[2] Defendant also argues that his trial counsel "failed to discuss the case with the defendant so as to develop a proper defense." (DE # 208 at 8.) Defendant, however, has failed to point to any errors in his trial counsel's performance, and his argument therefore fails.

could have raised his remaining grounds for relief in his direct appeal, and then address whether those claims are procedurally defaulted.

First, defendant, in Grounds 3 and 4 of his petition, takes issue with the court's jury instructions and specifically finds fault in the court's refusal to give two of defendant's proposed jury instructions. (DE # 208 at 3.) Defendant argues that the court's refusal to give the proposed instructions violated his Due Process rights. Because these claims deal with the instructions the court gave to the jury at trial, the claims could have been raised on his direct appeal.[3]

In Ground 5 of his petition, defendant argues that his Due Process rights were violated when the court "failed to properly clarify the jury's confusion between apparent intent and actual intent." (DE # 208 at 4.) During its deliberations, the jury sent the court a note regarding Court's Instruction # 24. (*See* DE # 102.) In the note, the jury expressed that it felt there was a contradiction in Court's Instruction 24, namely that the second and sixth paragraphs of that instruction contradicted each other. (*Id.*) Because the facts regarding this claim could have been brought in defendant's direct appeal, this ground for relief could have been presented on direct appeal. Additionally, defendant does not argue that his trial counsel was ineffective for the way that his counsel handled this matter at trial. (*See* DE # 208 at 8.)[4]

---

[3] Additionally, defendant does not allege these two grounds in his ineffective assistance claim.

[4] Defendant does not argue that his trial counsel was ineffective regarding this issue (*see* DE # 208 at 8), but even if defendant had argued his trial counsel was ineffective on this issue, his argument would still fail. Defendant argues that the court

In Ground Six of the petition, defendant argues that his rights under the Sixth Amendment's Confrontation Clause were violated when the court sustained objections to his trial counsel's questions to government witnesses regarding whether those witness believed defendant's statements were expressions of an intent to do the acts. (*Id.* at 5.) The facts regarding this claim were known to defendant at the time of his direct appeal, and could have been brought in his direct appeal. Defendant takes no issue with his trial counsel's performance on this issue, and does not argue that his trial counsel was ineffective as it relates to this ground.

In Ground 7 of his petition, defendant argues that his Due Process rights were violated when Court's Instruction # 14, 16, 19, and 22 "only required that the defendant wilfully make a statement, rather than wilfully make a threat. Though the court defined . . . 'wilfully make a threat' and 'knowing [sic] make a threat' in instruction No. 24, these definitions were rendered redundant because they were never referenced or required to be found by [the] jury in the elements of offense instruction in No. 14, 16, 19, and 22." (DE # 208 at 6.) Defendant does not argue that his trial counsel was ineffective

---

"did not explain to the jury that 'apparent' meant that they had to find that the statement expressed an apparent intent of the defendant . . . to do the acts." (*Id.* at 4.) But, in Court's Instruction # 24, the court specifically instructed the jury that "[a] threat is wilfully made if in addition to comprehending his *words the maker voluntarily and intelligently utters the words as a declaration of an apparent determination to carry out the threat.*" Although the court did not reiterate this requirement in its response to the jury's note (DE # 105), the court did inform the jury that there was no contradiction between the language in the second and sixth paragraphs of Court's Instruction #24, and instructed the jury to continue its deliberations while considering the evidence in the case and the court's instructions on the law. (*Id.*)

for failing to raise this issue at trial, (DE # 208 at 8), and this claim could have been raised on defendant's direct appeal.[5]

In Ground 8 of his petition, defendant argues that each count of the indictment failed to identify defendant's alleged statement associated with that count, and therefore, the trial was "fundamentally flawed because no issue was properly framed for the jury such that the jury could apply the instructions faithfully, and so the trial jury had to guess what statements the grand jury had in mind when it returned the charge." (DE # 208 at 6.) Defendant argues this resulted in a Due Process violation. Defendant, however, does not argue that his trial counsel was ineffective for failing to argue this point at trial, likely because defendant's trial counsel made essentially the same argument in a motion to dismiss the indictment prior to trial. (DE # 54 at 1-2 ("The indictment does not include either the words attributed to Mr. Buddhi that the government alleges violate the law or the circumstances within which those words were allegedly written.").) The facts supporting this claim were known to defendant at the time of his direct appeal, and this claim could have been raised in his direct appeal.

---

[5] Even if defendant did argue that his trial counsel was ineffective for failing to make this argument at trial, the argument would still fail. Defendant argues that his Due Process rights were violated because the jury instructions "only required that the defendant wilfully make a statement, rather than wilfully make a threat." (DE # 208 at 6.) Each of the instructions that defendant takes issue with (Court's Instruction # 14, 16, 19, and 22) required the jury to conclude that the charged statements constituted true threats as later defined in the instructions. Thus, to convict defendant of the charged offenses, the jury was required to find that defendant's statements constituted true threats. Defendant's argument on this issue therefore fails.

Because defendant could have raised these constitutional claims on his direct appeal, these claims are procedurally defaulted unless defendant "can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Barker*, 7 F.3d at 632. "Cause" in this context "means some impediment to making an argument." *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012). "Prejudice exists where an error has a substantial and injurious effect or influence in determining a jury's verdict." *Mankarious v. United States,* 282 F.3d 940, 944 (7th Cir. 2002).

The court need only address the cause element of the cause and prejudice standard to resolve this issue. Defendant did not fail to raise this claims on his direct appeal due to some impediment to making these arguments. Rather, defendant failed to raise these claims on appeal because he failed to prosecute his appeal after being allowed to proceed pro se, which resulted in the Seventh Circuit dismissing his appeal.[6] This is insufficient to establish cause in the procedural default context. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." (Emphasis in original)).[7] Because the court concludes that defendant cannot

---

[6] Additionally, because defendant proceeded pro se on his appeal, defendant cannot point to ineffective assistance of appellate counsel to excuse his procedural default.

[7] After being allowed to proceed pro se on his appeal, defendant moved for several extensions of time of file his appellate brief. (Appellate Docket ## 52, 54, 56, 58.) The Seventh Circuit granted several extensions (Appellate Docket ## 53, 55, 57), but eventually warned defendant that no additional extensions would be granted absent extraordinary circumstances. (Appellate Docket # 57.) Despite this warning, defendant moved for an additional extension of time. (Appellate Docket # 58.) The Seventh Circuit

show cause for his procedural default, it need not address whether he can show prejudice. *Oliver v. United States,* 961 F.2d 1339, 1342 (7th Cir. 1992).

The other way in which defendant can avoid procedural default "is to show actual innocence, that is, to show that in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Holmes v. Hardy,* 608 F.3d 963, 968 (7th Cir. 2010) (citations and quotations omitted); *see also Belford*, 975 F.2d at 315 n.4. As noted earlier, defendant argues several times in his brief that he is actually innocent because his statements are advocacy and not threats to do the actual acts. (DE # 208 at 1, 3, 7.) Defendant, however, has not presented any additional evidence in support of his claim that he is actually innocent. Additionally, defendant's argument that he is actually innocent because his statements constituted advocacy instead of threats to do the actual acts is unpersuasive. As the court noted earlier, it was up to the jury to interpret defendant's statements, *Schneider*, 910 F.2d at 1570, and a reasonable jury could conclude that defendant was guilty of the charged offenses in this case.

---

denied defendant's motion, but gave defendant an additional two weeks to file his appellate brief. (Appellate Docket # 60.) Defendant then moved for another extension of time to file his appellate brief (Appellate Docket # 62) because the facility in which defendant was incarcerated did not offer adequate time and services to allow defendant to complete his appellate brief. The court denied that request (Appellate Docket # 63), and dismissed defendant's appeal for failure to prosecute. This court similarly concludes that defendant's difficulties in drafting his brief due to his incarceration are insufficient to excuse his procedural default, considering the Seventh Circuit gave defendant multiple extensions of time to file his appellate brief.

Defendant, therefore, cannot avoid his procedural default on these claims, and his § 2255 motion will be denied as it relates to these claims. Even if defendant had not procedurally defaulted these claims, however, he would still not be entitled to relief, as his arguments have no merit. The court will therefore address defendant's remaining grounds for relief, with the exception of Grounds 5 and 7, which the court already addressed above. *See supra* footnotes 4 & 5.

In Ground 3 of his petition, defendant argues that his Due Process rights were violated when the court "refused to instruct that [the] jury must find that a reasonable person would perceive the defendant's statements as expressions of defendant's or cohort's intention (or intention of someone acting in concert with defendant) to do the acts." (DE # 208 at 3.) Although he does not specifically argue this in his petition, the language defendant takes issue with appears to be the fourth paragraph of Court's Instruction #24, which states:

> Before you can convict the defendant under the law, you must be convinced beyond a reasonable doubt that the defendant intentionally made the statement with which he is charged in the context and under such circumstances that a reasonable person would foresee that the statement would be interpreted by persons reading it as a serious expression of an intention to inflict bodily harm upon or to take the life of another person.

This language has been approved by the Seventh Circuit multiple times. *See United States v. Hoffman*, 806 F.2d 703, 711-12 (7th Cir. 1986); *see also United States v. Fuller*, 387 F.3d 643, 646-48 (7th Cir. 2004). Defendant has not presented any case law to support his argument that the court was required to give an instruction that included the language

defendant uses in his petition instead of the instruction the court actually used, and his argument on this issue therefore fails.

In Ground 4 of his petition, defendant argues that his Due Process rights were violated when the court refused to instruct the jury that "in the case where statements are perceivable as both advocacy and as threats to do the acts, the advocacy of acts cannot constitute threats, except when those statements would more likely than not be perceived as expressions of intention to do the acts rather than advocacy." (DE # 208 at 3.) As the court noted above, the instruction it gave at trial regarding this issue was approved by the Seventh Circuit at least twice. Additionally, defendant has not directed the court to any precedent indicating it was required to give his proposed instruction instead of the instruction the court actually gave. Defendant's argument on this issue therefore fails.[8]

In Ground 6 of his petition, defendant argues that his Due Process rights and his rights under the Sixth Amendment's Confrontation Clause were violated when the court "sustained objections to the defense counsel's questions to government witnesses to elicit their perceptions whether defendant's statements were expressions of intention

---

[8] Defendant does argue that Grounds 3 and 4 of his petition show "that the reasonable doubt standard" set out in *Jackson v. Virginia* was violated in this case. 443 U.S. 307 (1979). Although defendant does not elaborate on this argument, in *Jackson*, the Supreme Court held that a state habeas petitioner is entitled to relief "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. As noted above, however, a rational trier of fact could have found defendant guilty of the charged offenses beyond a reasonable doubt, and defendant's argument on this issue fails.

to do the acts." (DE # 208 at 5.) Defendant directs the court to three objections that he

takes issue with:

> **Defendant's Trial Counsel**: In reading that finance page, what method of killing George W. Bush did you think that that writer was going to use?
> **Government Attorney**: Objection. That's irrelevant, your Honor.
> **The Court**: Sustained.
> **Defendant's Trial Counsel**: Were you able to determine from that page when this act might happened [sic]?
> **Government Attorney**: Objection, relevancy, your Honor.
> **The Court**: I just don't see the relevancy of it. I ruled. Sustained.

Trial Transcript Volume II, page 84 (Testimony of Hayward McMurray).

> **Defendant's Trial Counsel**: Well this calls for [the] assassination of G.W. Bush; correct?
> **The Witness**: Yes.
> **Defendant's Trial Counsel**: There's nowhere in there that it says, I'm going to kill G.W. Bush; is there?
> **Government Attorney**: Objection, relevancy, you Honor.
> **Defendant's Trial Counsel**: Your Honor, we've gone --
> **The Court**: It's sustained.

Trial Transcript Volume II, page 90 (Testimony of Hayward McMurray).

> **Defendant's Trial Counsel**: Now, your impression from these posts, they were a call for the president to be killed; correct?
> **The Witness**: That's exactly --
> **Defendant's Trial Counsel**: Among other things?
> **The Witness**: That's exactly what my impression was.
> **Defendant's Trial Counsel**: Yes. You don't recall any method of killing the president; did you [sic]?
> **Government Attorney**: Objection, relevancy.
> **The Court**: Sustained.

Trial Transcript Volume II, page 117-18 (Testimony of William Bachman).

Regarding these excerpts from his trial, defendant argues that "[q]uestions such

as [the] method of killing apparently perceived, [the] time of act apparently perceived,

whether it says [the] author is going to do the killing, etc. are all relevant toward

establishing the perception of the witness and to discern whether or not [the] witness is faking his responses." (DE # 208 at 5.)

"[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Vasquez*, 635 F.3d 889, 894-95 (7th Cir. 2011) (citations and quotations omitted). "A Sixth Amendment violation occurs when the defendant shows that he was denied the opportunity to elicit testimony that would be relevant and material to the defense." *Id.* at 895 (citations and quotations omitted).

The court finds that the testimony defendant's trial counsel tried to elicit with the questions quoted above, if relevant, was only marginally relevant. The government was not required to prove when defendant might carry out an alleged threat, the method defendant planned on using to carry out an alleged threat, or that defendant explicitly stated in his threat that he was going to perform the alleged threat himself. *See Schneider*, 910 F.2d at 1570. Additionally, the witnesses' answers to the questions the government objected to would likely have revealed very little about how the witnesses perceived the statements. And, "although a defendant's due process right to a fundamentally fair trial depends on her ability to present exculpatory evidence, this

evidence also must be relevant." *United States v. Williamson*, 202 F.3d 974, 979 (7th Cir. 2000). Defendant's argument on this point therefore fails.[9]

Even if the court should have allowed the witnesses to answer the questions quoted above, defendant's trial counsel still successfully cross examined these witnesses about "their perceptions whether defendant's statements were expressions of [the] intention to do the acts." (DE # 208 at 5.) Defendant's Trial Counsel had this exchange with witnesses Hayward McMurray:

> **Defendant's Trial Counsel:** On that page it also said, Anglo-Saxons get what they deserve, being free and brave to kill Indians and Arabs; correct?
> **The Witness:** Yes, sir.
> **Defendant's Trial Counsel:** And advocated, kill the motherfucker Anglo-Saxons now; correct?
> **The Witness:** Yes, sir.
> **Defendant's Trial Counsel:** It didn't say that the author was going to harm anyone; did it?
> **Government Attorney:** Objection, relevancy, your honor.
> **The Court:** He can answer that.
> **The Witness:** I took it very directly, yes.
> **Defendant's Trial Counsel:** Where in there does it say that the author – and you can look at it and tell me.
> **The Witness:** Call for the assassination of G.W. Bush, and then also if a person didn't – wasn't the author, why would he be posting it? I took it very directly as the author of this was calling for this action.
> **Defendant's Trial Counsel:** But –
> **The Witness:** Including the rape and murder of two women. And I don't consider free speech as rape and murder of any woman. That goes beyond the bounds of free speech.
> **Defendant's Trial Counsel:** But it was a call for it; correct?
> **The Witness:** It was a call, yes.

---

[9] Defendant also argues that the answers to the objected to questions would have been relevant in discerning whether or not the witnesses were faking their responses. (DE # 208 at 5.) Defendant fails to explain how the answers to these questions would have revealed these witnesses were lying during their testimony, and the court is unable to discern a reason on its own. Defendant's argument therefore fails.

> **Defendant's Trial Counsel:** Okay. An advocacy for it?
> **The Witness:** An advocacy is for – which I think, is when you call for an advocacy, you also have the right – you're calling for – you cannot divorce inciting to riot, inciting to action for – less than carrying out the action being called for in this so-called free speech.

Trial Transcript Volume II, page 84-86 (Testimony of Hayward McMurray).

Additionally, as noted above, defendant's trial counsel had the following exchange with witness William Bachman:

> **Defendant's Trial Counsel**: Now, your impression from these posts, they were a call for the president to be killed; correct?
> **The Witness**: That's exactly --
> **Defendant's Trial Counsel**: Among other things?
> **The Witness**: That's exactly what my impression was.

Trial Transcript Volume II, page 117 (Testimony of William Bachman). These excerpts show that defendant's trial counsel successfully cross examined both McMurray and Bachman in an attempt to learn their perceptions regarding defendant's statements. Any additional information that would have been learned from these witnesses answering the objected to questions would have been cumulative. Defendant's argument on this issue therefore fails.

In Ground 8 of his petition, defendant argues that his Due Process rights were violated and his trial was fundamentally flawed when the indictment never charged any specific statements as threats "because no issue was properly framed for the jury such that the jury could apply the instructions faithfully, and so the trial jury had to guess what statements the grand jury had in mind when it returned the charge." *Id.* Defendant's trial counsel made essentially the same argument in a pretrial motion. DE # 54 at 1-2 ("The indictment does not include either the words attributed to Mr.

Buddhi that the government alleges violate the law or the circumstances within which those words were allegedly written.").) The court rejected this argument:

> Defendant's second motion argues that the indictment does not set forth all of the elements of 18 U.S.C. § 871(a), 879(a), 875(c), and 844(e), or adequately inform him of the offenses with which he has been charged. (Def.'s Mot., docket # 54, at 1.) Defendant claims that because the indictment merely tracks statutory language and lacks additional factual detail, he is not able to adequately prepare a defense, and that he "still on the eve of trial must guess at what conduct he needs to defend." (Def.'s Reply, docket # 66, at 11.)

> ***

> As explained above, the First Amendment requires that the Government prove at trial that defendant's allegedly offensive statements constituted "true threats." Defendant admits that the Government's use of the word "threat," rather than "*true* threat," does not affect the indictment's validity, and rightly so. *United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir. 1983). Defendant also concedes that the exact wording of an alleged threat need not be specifically quoted in an indictment. *United States v. Robin,* 693 F.2d 376, 380 (5th Cir. 1982). Nonetheless, defendant insists that because the "true threats" analysis is a context-sensitive inquiry, "the context in which the statements were allegedly made is therefore an essential fact relevant to proving the 'true threat' element of the charged offenses." (Def.'s Mot., docket # 54, at 3.) According to defendant, the indictment in this case is insufficient because it does not provide this essential factual context.

> A district court adopting this very idea in a presidential death threat case was reversed by the Second Circuit Court of Appeals. *United States v. Carrier,* 517 F. Supp. 644, 648 (D.C.N.Y. 1981), *rev'd,* 672 F.2d 300, 303 (2d Cir. 1982). The district court held:

>> The only way to separate protected speech under the First Amendment from unprotected speech is to examine the context within which that speech is uttered. For this reason, it is essential that a properly drawn indictment under Section 871 include some mention of the spoken context of words which the government believes to be threatening within the meaning of that statute.

> *Carrier,* 517 F. Supp. at 648. The Court of Appeals reversed, holding that an indictment's failure to set forth the factual context of the alleged threat did

not make the indictment insufficient. *Carrier,* 627 F.2d at 303. While the First Amendment requires that a factfinder's determination of a "true threat" be made under a context-sensitive analysis, *Carrier* clarifies that the First Amendment does not change the standards for determining the sufficiency of an indictment by requiring the Government to list in the indictment the facts that play into the context-sensitive "true threat" analysis. *Id.*

Seventh Circuit precedent supports the logic set forth in *Carrier*. In *Agostino,* the court stated: "'The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved.'" 132 F.3d at 1191 (quoting *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)). The court explained that an indictment is not required to reveal the specific facts that the Government would use to prove the intent element of an alleged crime. Similarly, in this case the indictment was not required to reveal the specific facts that the Government would rely on in proving the "true threat" element of defendant's alleged crimes.

So long as the indictment states the elements of the crime charged, informs the defendant of the nature of the charge so he may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense, the indictment is sufficient. *United States v. Sandoval,* 347 F.2d 627, 633 (7th Cir. 2003). Defendant's indictment lists the dates of his allegedly offensive speech and the names of the public figures that he allegedly threatened on those dates. For example, count one states: "On or about December 13, 2005, in the Northern District of Indiana and elsewhere, the defendant, Vikram S. Buddhi did knowingly and willfully threaten to kill the President of the United States, George Bush." (Indictment, docket # 9.) The other counts are similarly phrased. Such language "provide[s] some means of pinning down the specific conduct at issue in order to apprise the defendant of the charges." *Sandoval,* 347 F.2d at 633; *United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir. 1983) (indictment charging that the defendant "did willfully and knowingly make an oral threat to take the life of the President of the United States" was held to be "sufficient to apprise Howell of the charge against him and to avoid exposing him to the risk of double jeopardy").

In sum, defendant's motion "confuse[s] his constitutional right to know what offense is charged with his need to know the evidentiary details establishing the facts of such offense." *United States v. Mosley,* 786 F.2d 1330, 1335 (7th Cir. 1986) (internal quotation marks omitted). Defendant "may obtain the factual proof supporting the charges, if vital to his defense, by a motion for a bill of particulars." *Id.* at 1335; FED. R. CRIM. P. 7(f). Indeed, a motion for a bill of particulars is "the preferable procedure," as opposed to a motion attacking

the indictment, in a situation where a defendant, charged with issuing threats, believes that he needs additional factual information to prepare his defense. *Carrier,* 672 F.2d at 303 & n.5 ("Armed with a bill of particulars, which may be obtained right after arraignment as per Fed. R. Crim. P. 7(f), setting forth the details under which defendant's allegedly threatening words against the life of the President were spoken, defendant could have made a motion to dismiss the indictment prior to trial.")

(DE # 67 at 9-13.) Just as the indictment contained information sufficient to apprise defendant of the charges against him, the information in the indictment was sufficient to inform the jury of which of defendant's statements each count referred to, as each count listed the date of the statement and the name of the public figure involved. Defendant's argument on this point fails.[10]

Finally, in Ground 11 of his petition, defendant argues that the "cumulative effect of district court errors and ineffective assistance by counsel affected the outcome of the trial because it resulted in unfair prejudice, prevented the jury from considering the context of the defendant's posting, and prevented the jury from considering the theory of defense that mere advocacy of acts, without more, is not unlawful . . . ." (DE # 208 at 9.) Because the court has concluded that defendant's first 10 grounds for relief lack merit, defendant's final ground for relief fails as well.

---

[10] Defendant also argues that his Due Process rights were violated because several jury instructions stated that the jury had to "examine the statement as charged in the indictment, but the indictment never charged any statement as a threat." (DE # 208 at 6.) Although the court is unsure if this argument differs from defendant's primary argument quoted above, if this is a separate argument, the court finds it to be equally unpersuasive. The indictment both sufficiently informed the jury of the statement at issue in each count and adequately tracked the language of the charged statutes.

## III.  CONCLUSION

After consideration of defendant's motion, the court is convinced that it "plainly appears from the motion . . . and the record of prior proceedings" that defendant is not entitled to relief, requiring the summary dismissal of his § 2255 motion. RULE 4, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Accordingly, defendant's motion pursuant to 28 U.S.C. § 2255 (DE # 207) is summarily **DENIED** and **DISMISSED**. Further, the court **DENIES** the issuance of a certificate of appealability ("COA"). A COA should issue only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find it debatable whether the district court correctly resolved the issues or would conclude that those issues are adequate to deserve further proceedings. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). The court believes that the explanation herein for the denial of defendant's motion adequately explains why this standard has not been met.

The clerk shall **ENTER FINAL JUDGMENT** dismissing the parallel civil cause (2:13 CV 128) initiated by the § 2255 motion.

**SO ORDERED.**

Date: May 19, 2014

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
